The People *vs.* Thomas Cochrane. *Misdemeanor.*

THOMAS COCHRANE was charged with receiving stolen goods, knowing they were stolen. The state of this case was as follows : the prisoner came to Boggs and Thompson's store on the 5th of August, and left them a quantity of fine goods for sale, telling them he had bought the goods of a young man whom he named, and had more of the same kind. From circumstances attending the situation of the goods, no regular invoice, or bill of parcels, the marks on some pieces being effaced, &c. the auctioneer was suspicious they were not properly obtained : he communicated his suspicions to Mr. Austin, whom he knew had lost goods of the same description, a short time before. Mr.

*It is the intent that constitutes the crime, and it is to be made out from an impartial comparison of all the circumstances of the case.*
Leach's case vol. i. p. 303.

NEW-YORK,  Austin came to his store, and upon an examination of the
Nov. 1822.  goods, identified them as his own.  The sale of the goods
The People  was to take place the same afternoon, at which sale the
    vs.     prisoner was to attend.  Mr. Austin placed his brother in
T. Cochrane. the store to intercept him when he came to attend the
sale, which was effected.

The prisoner was arrested and brought to the police
office : he said the goods had been left at his house by one
Stephens, who it seems by the examination of the prison-
er, had left the city, and had given him a letter of instruc-
tions how to sell them.  In questions put to the prisoner
how he came to take goods to sell under the particular
circumstances of these, not having the regular invoice,
and bill of parcels, the usual marks, &c. he replied, Mr.
Stephen's told him they were smuggled by him; and upon
being asked if he took a New York paper, and if he was
not informed of the robbery of Haggerty and Austin's
store, replied in the affirmative.  The goods, which con-
sisted of fine cambrics and silk hose, &c. were crammed
in a trunk without any order, and not in the usual method
observed among merchants.

After being arrested and taken to the police-office, he
went to the City Hotel, and other places, to find the per-
son from whom he obtained the goods, but without effect.
However, the same evening he was arrested at the prison-
er's house, and by his direction.  It proved to be William
Robertson, who was subsequently convicted for the of-
fence of stealing these and other goods.  Robertson was
arrested and committed to Bridewell, and the prisoner
bailed.  Before this, however, the prisoner, in company
with Mr. Austin and an officer, went up to his house, and a
search was made for the remainder of the property, which
was found in the garret, in a trunk, except a few pieces

in the store, and a few pieces sold to the neighboring storekeepers; these were all identified and proved by Mr. Austin, to be the same property taken from his store.

Robertson was produced as a witness by the prosecutor, and refused to answer any questions in relation to the goods.

The defendant produced a number of witnesses, who swore that he was a man of the most unexceptionable character, that he had long been known to them ; that he was a watch maker, and had arrived in this country about fifteen years ago from Scotland ; that he had worked at his trade a number of years, but finding it fail, had recourse to keeping a small dry good store, and that they always believed him to be an honest, industrious man.

*Price*, his counsel, submitted the case to the jury without making any observations.

*Maxwell, District Attorney*, said that he had no disposition to press this case, but that he thought it his duty to make some remarks to the jury ; and that afterwards if the jury should think he was not guilty, he should rejoice in his acquittal ; but if Cochrane was not a guilty man, he was a very imprudent one. About six weeks before the date of this charge, the store of Haggerty and Austin was robbed to a large amount ; that robbery and the particulars of it was published in the New York papers, some of which the defendant took ; that he must have known of the robbery, appears almost impossible not to believe. That the manner of receiving the goods was calculated to awaken the suspicion of a prudent man.

The goods were crammed promiscuously in a trunk without order, or that method supposed to be attended to among dealers in that article ; the transaction was a secret one ; at the time he received the goods, according to his

NEW-YORK, own story, they were said to be smuggled by Robertson;
Nov. 1822. he makes no inquiry about Robertson, or how he obtain-
The People ed the goods, he left them in small quantities at different
    vs.    places, &c.
T. Cochrane.

*By the Court.*—" The enormity and prevalence of this
" crime is great.   It is our duty to punish it whenever and
" wherever it can be detected ; for if facilities was not
" given to felony, to vend articles stolen, fewer robbe-
" ries would be committed.   The case before us is one of
" doubt ; the prisoner received the goods ; how did he
" receive them ? his intent can be made out only from
" an impartial view of all the circumstances taken togeth-
" er.   The intention at the time constitutes the offence. If
" you think he received them *knowing* they were stolen,
" he ought to be convicted, otherwise he ought to be ac-
" quitted.

" The Court will pass a few circumstances that are im-
" portant in this case ; and first, of those circumstances
" that make against him.

" 1st. He bought them at a reduced price.

" 2d. The amount was large, being from $1500 to
" $1700.

" 3d. They were received of a young man he did not
" know.

" 4th. They were thrown in a trunk in a confused and
" crowded manner.

" 5th. The trunk was found in a room up stairs, and
" not in his store.

" Second. There are other circumstances that operate
" in his favor.

" 1st. He goes in the day time to Boggs and Thomp-
" son's store, which is but a few doors from Haggerty and
" Austin's store.

" 2d. He tells Mr. Thompson he had more of the same NEW-YORK, " kind of goods. Nov. 1822.

" 3d. He told Mr. Thompson he would be present at The People " the sale. *vs.* T. Cochrane.

" 4th. The original marks, with a few exceptions, were " allowed to remain on the goods ; and after being ar- " rested.

" 5th. Goes to the City Hotel after the thief.

" 6th. Robertson, the real thief, upon being brought " into Court, refused to answer.

" From a fair view and comparison of these facts, it re- " mains for the jury to say whether Cochrane is guilty of " receiving these goods, knowing they were stolen, or " not."

The jury retired, and returned in Court with a verdict of acquittal.

Note.—In Bract. 1. Edw. III. it is said, that anciently attempts upon the life of another were adjudged felony : the *will*, it was said, was taken for the *fact*. But now the law is altered. It does not punish unless the *intent* is carried into execution, except in cases of treason, where the intendment, if satisfactorily proved by circumstances, may be, and is punished without the intent being executed. 3 Inst. 108. The *intention*, however, is yet the principal ingredient of crime. The intention of force and violence makes riots criminal. 3 Inst.

If a man entering a tavern commits a trespass, the law will adjudge that he · originally intended it. 8 Rep. See also the case of King v. Randall, Leach's Cases, 303. 3d edit. Hawk. P. C. Cas. 12. sec. 12. Cas. 45. sec. 7. Cas. 46. sec. 2. Plow. 355.

In Hagerman's case, City Hall Rec. vol. 3. p. 73. it was held that the intent to kill is presumed from the means used which were calculated to produce death.

· And in James Gordon's case, City Hall Rec. it was decided that the intent to ravish might be presumed from acts indicative of that intention. City Hall Rec. vol. 3. p. 73.